ENNISS vs. O'CONNER et ux.

1810. DECEMBER.

Enniss vs O'Conner

APPEAL from *Baltimore* County Court from a judgment rendered in favour of the defendants in that court, (the present appellees,) in an action of covenant. The defendant pleaded the general issue.

1. The plaintiff at the trial read in evidence a contract between him and *Catharine*, (one of the defendants,) whilst she was sole and unmarried, and with whom *Michael*, (the other defendant,) hath since intermarried, by the name of *Catharine Welsh*, dated the 15th of July 1796, as follows: "Articles of agreement between *Catharine Welsh*, of *Baltimore*-town, of the one part, and *Joshua Enniss*, of the place aforesaid, of the other part, witnesseth, that the said *Enniss* doth covenant and agree to finish the carpenter and joiner's work of a house for the said Mrs. *Welsh*, on Bond street, in a plain workmanlike manner, as may be adjudged by a carpenter or joiner, as may be hereafter appointed; and the said *Catharine Welsh*, on her part, doth covenant and agree to give the present advance on the measurement of the aforesaid work. As witness," &c. Signed and sealed by the parties. The plaintiff further offered in evidence, by persons not appointed by the parties for that purpose, that he, after the execution and delivery of the contract, and in compliance therewith, did progress in the completion and finishing the carpenter's and joiner's work of the house, mentioned in the contract of the defendant *Catharine*, whilst she was sole and unmarried, in a plain workmanlike manner, and was then and there willing and ready to have completed and finished the whole carpenter's and joiner's work of the house in a plain workmanlike manner, but *Catharine*, whilst sole, &c. refused to permit the plaintiff to finish the whole of the carpenter's and joiner's work, and discharged him from the same. He further offered evidence, by the testimony of witnesses who were not appointed according to the manner prescribed by the contract, that the value of the work so done by him for *Catharine*, whilst sole, &c. at the time he was prevented from proceeding with and finishing the work, amounted to the sum of ———, and that the damages sustained by the plaintiff, by reason of his not being able to finish the work, according to the contract, in consequence of the refusal of *Catharine* to permit him, amounted to the sum of ———.

In covenant on a contract, where agreed to finish the carpenter and joiner's work of a house, for the defendants, in a plain workmanlike manner, as might be adjudged by a carpenter or joiner to be thereafter appointed. The plaintiff progressed in the work, but was prevented from completing it by the defendants, who discharged him. A valuation was made of the work done, by persons not appointed by the parties, and evidence given of the damage sustained in consequence of not being permitted to finish the work. Held, that the plaintiff, in order to entitle him to recover, was bound to show, by a person or persons appointed for that purpose by the parties, that as far as he had progressed in the building he had executed it in a plain workmanlike manner; and that, as the plaintiff had offered no such evidence, it was irrelevant to go into evidence to show that he was prevented from going on with the work by the defendants, or to go into any evidence of the damage sustained by him.

But the court, (*H. Ridgely*, Ch. J.) was of opinion, that the plaintiff was bound to show, in order to entitle him to recover, by a person or persons appointed for that purpose by the parties, that as far as he had progressed in the building he had executed the same in a plain and work-manlike manner, according to the averment in the declaration, and that the plaintiff having offered no such evidence, it was irrelevant to go into evidence to show that the plaintiff was prevented from going on with the work by the defendant *Catharine*, or to go into any evidence of the damage sustained by the plaintiff. The plaintiff excepted.

2. The plaintiff, in support of the declaration, then offered to prove by *G. Hall*, *B. Spencer* and *D. Harrison*, that the defendant had appointed *Harrison* to measure and adjudge the work done by the plaintiff, but that *Harri-son* refused to act, unless some other persons were appointed to act with him; that the defendant then nominated *G. Hall*, *J. Boyer* and *J. Moore*, for that purpose; that when *Harrison*, *Hall*, *Boyer* and *J. Moore*, came to the house, *Hall* refused to proceed unless he had the plaintiff's consent, and *Hall*, in the presence of the defendant, requested *Spencer* to go to the plaintiff and ask him if he consented that he or they, (meaning the persons appointed,) he is not certain which, should measure and adjudge the work, to which the plaintiff replied he was satisfied that he or they, (he does not recollect which,) should; which answer of the plaintiff, *Spencer* informed *Hall* of, upon which *Hall* and *Harrison*, *Boyer* and *Moore*, each of them did individually measure and examine every part of the work; and that *Hall*, in making up his opinion of the work, did not rely upon the information or examination of any person but himself, and that his judgment was formed solely from his own measurement and observation on the work, but that *Hall* did not conceive himself authorised to act alone, and said he would not, without the other persons so appointed acted also. That the day after *Hall* had so measured and adjudged the work, he informed the plaintiff that he, together with *Harrison*, *Moore* and *Boyer*, had adjudged and measured the work, upon which he expressed his entire approbation; and that *Hall*, and the other persons so appointed, were carpenters. But the court, (*H. Ridgely*, Ch. J.) refused to permit the above evidence to go to the jury to support the plaintiff's declaration. The plaintiff excepted;

and the verdict and judgment being for the defendants, he appealed to this court.

The case was argued before CHASE, Ch. J. POLK, BUCHANAN, and GANTT, J. by

*Winder*, for the Appellant; and by

*W. Dorsey*, for the Appellees. He cited *Bristow vs. Wright*, 2 *Doug.* 666, 667.

The *first bill of exceptions* was abandoned by the appellant's counsel.

JUDGMENT AFFIRMED.

---

PIERPOINT'S Adm'rs. vs. PIERPOINT.

APPEAL from *Baltimore* County Court. Covenant by the appellee against the appellants. The general issue was pleaded; and at the trial the plaintiff gave in evidence the following agreement, dated the 17th of October 1799. "I do promise and oblige myself to convey to *Samuel Pierpoint*, or his assigns. six acres of land, lying between his house and *Sam. Clark's*, as I do acknowledge I have received the full purchase money for said land. In witness" &c. Signed and sealed by *Thomas Pierpoint*. And proved that *T. Pierpoint*, the intestate, executed the same. He also gave in evidence a grant dated the 20th of December 1797, issued to *Joseph, Thomas, Walter, Benedict* and *Samuel Pierpoint*, and *Adam Ground*, as tenants in common, for a tract of land called *Pierpoint's United Defence*, containing 357 acres. He also proved, that the six acres of land, mentioned in the above agreement, is part of the land mentioned in the grant, and that *S. Pierpoint* (the plaintiff.) and *T. Pierpoint*, (the defendants' intestate,) are the same *S.* and *T. Pierpoint* mentioned in the grant. It was admitted by the parties that *T. Pierpoint* never made a conveyance of the six acres of land mentioned in the agreement to the plaintiff, and that the plaintiff had several times requested *T. Pierpoint* to convey the land to him, which he promised to do, but never did, nor has it ever since been conveyed to the plaintiff, or been in his possession, nor a deed of conveyance for the same ever tendered,

Covenant on a promise made in 1799, in writing, under seal, by T. to convey to S. six acres of land, lying in a particular place, the purchase money being received. There had been a grant made to T. and S., and others, as tenants in common, of 357 acres of land, which had not been divided, and the six acres were a part of that tract. T. died in 1800, who had in his life-time refused to execute a deed for the land, but there was no evidence that a deed had been tendered to T. for him to execute.— *Held*, that S. was entitled to recover of the administrators of T., unless they proved to the jury that T. had made a regular and legal conveyance of the six acres of land to S., or had tendered a deed for the same